On Application for Rehearing
En Banc.
SAVOY, Judge.
We granted this application for rehearing to determine whether an award for workmen’s compensation benefits for total and permanent disability was erroneously affirmed in favor of the plaintiff upon the first hearing; counsel for defendant insurer strenuously contending that Mrs. Veule-man failed to prove that she was suffering any residual disability.
Although there is considerable doubt as to whether or not Mrs. Veuleman was actually injured during the course of her employment, we will resolve that doubt in her favor as did the trial court and proceed to examine the evidence in the record to see if it supports the position that Mrs. Veuleman is totally and permanently disabled under the Louisiana Workmen’s Compensation Act.
Dr. Bernard L. Kaplan testified by way of deposition that he conducted a physical examination of plaintiff’s leg in the area exhibiting pain. During the course of his examination he applied a tourniquet above the groin, thus extending the vein for examination. He stated that Mrs. Veuleman did not complain of pain associated with the vein, and it was his opinion that her pain probably represented some muscular pain. He indicated that she did not have throm-bophlebitis at the time of the examination (March 20, 1968) although he readily admitted that she possibly did have thrombo-phlebitis at an earlier date. He further thought she was not disabled at the present time and any prior trouble had been with regards to a shallow vein known as the saphenous as contrasted to any deep vein trouble. When questioned as to the severity of thrombophlebitis of a superficial vein he responded, “ * * * Superficial vein thrombophlebitis is really a very minor condition.” He testified as to the possibility of a thromboembolism as being highly unlikely and did not think it should be considered in a superficial vein thrombophlebitis as a possible complication. Dr. Kaplan also testified that it is commonly taught that it is not necessary to anticoagulate a superficial vein thrombophlebitis in order to take precautionary measures against possible pulmonary embolism when dealing with a superficial vein thrombophlebitis. When asked what he does for his patients with an obvious case of thrombophlebitis of the greater saphenous vein, he answered that he would possibly have them wear elastic stockings for a while, but would not put them on coagulants. He also stated that he would have them elevate their feet while at rest and do certain amounts of exercise.
Dr. M. E. Gutierrez also testified by deposition. He indicated that his specialty was general surgery, and that he examined Mrs. Veuleman on March 12, 1968, at the instance of the Louisiana Department of Education, Division of Vocational Rehabilitation Disability Determination. A complete physical examination was conducted with the only positive findings being a mild degree of varicose veins (mild to moderate) primarily in the right leg. His examination for a residual for thrombophlebitis although conducted was negative. Dr. Gutierrez stated that although he could not say whether or not Mrs. Veuleman had throm-bophlebitis in the superficial veins of the right leg on July 5, 1967, or for some time thereafter, he was of the opinion that she did not have phlebitis and was not in his opinion disabled, the varicosity being symptomatic and stripping indicated. He thought she should be tapered off her anticoagulants and could return to her former occupation with an elastic support. When asked whether or not the fact that Mrs. Veuleman had suffered a superficial thrombophlebitis would predispose her to a reoccurrence, he answered possibly, his answer being con *263 tingent upon the presence or absence of other conditions.
Dr. S. F. Fraser was called upon the trial of the case to testify on behalf of Mrs. Veuleman as her attending physician. He said that although he considered himself a general practitioner, he dealt almost entirely with internal medicine and had occasion to see one or two cases of thrombophlebitis a month. Dr. Fraser testified that he examined Mrs. Veuleman on July 6, 1967,. at which time his examination revealed a superficial vein thrombophlebitis in the right thigh area. Up until the trial Dr. Fraser said that he would check Mrs. Veuleman every several weeks for a prothrombin determination to make certain that the clotting time of the blood did not get too low so as to endanger her. It was his opinion that Mrs. Veuleman should not return to work because of a combination of factors including her elevated blood pressure, her tendency toward obesity, and her occupation included long hours of standing thus diminishing circulation; all of which together may tend to predispose her to the thrombophlebitic problem in the future.
While we recognize the law set forth on the original hearing that “The law does not expect, and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards to his own health and safety, but also to those of his fellow employees”, we are of the opinion the evidence before us does not prove by a preponderance that Mrs. Veuleman would have to work in pain, or that it would materially increase a hazard to her health, should she return to work as a cashier-checker.
The final issue is the period for which benefits should be awarded. Dr. Fraser was of the opinion that Mrs. Veuleman had made a reasonable recovery as of the time of the trial (March 27, 1968) and he felt that she could perform most activity other than standing or sitting for long periods of time. Drs. Kaplan and Gutierrez both were of the opinion that as of the time of their examinations Mrs. Veuleman was not disabled.
Considering the record as a whole, we think plaintiff is entitled to no more than benefits at the maximum rate from the time of the accident up until the trial date, or a period of 37 weeks, at the rate of $35.00 per week from the date of the accident, July 5, 1967, through March 27, 1968, with legal interest upon each installment from date of delinquency until paid. In addition, all of her medical expenses incurred from the accident through the trial date amounting to $1,156.25 are to be paid by the insurer. Costs of this appeal are to be assessed against the defendant insurer.
Affirmed in part, reversed in part and rendered.
FRUGÉ, J., dissents for reasons heretofore assigned on original.